UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BASHIR IBRAHIM HMEID                  CIVIL ACTION

VERSUS                                             NO. 18-3449

NELSON COLEMAN CORRECTIONAL        MAGISTRATE JUDGE
CENTER, ET AL.                              JOSEPH C. WILKINSON, JR.

**ORDER AND REASONS ON MOTION**

This is a civil action brought by Bashir Ibrahim Hmeid under 42 U.S.C. § 1983 ("Section 1983") against the Nelson Coleman Correctional Center ("Coleman"), Deputy Charles Floyd ("Floyd"), Deputy David Bailey ("Bailey"), Lieutenant Rocco Dominic ("Dominic") and Sergeant Darryl Richardson ("Richardson"). Hmeid originally asserted six claims: (1) While incarcerated in Coleman on August 17, 2017, Deputies Floyd and Bailey, Lieutenant Dominic and Sergeant Richardson used excessive force against him when they tased and beat him during a strip search. (2) He did not receive adequate medical care for a wrist injury that existed before he was incarcerated or for the injuries he suffered on August 17, 2017. (3) His privacy rights were violated in the Coleman bathroom and shower areas, and the food and the jail are cold. (4) Jail officials tampered with his mail. (5) Coleman inmates do not receive adequate recreation time. (6) State Department of Corrections ("DOC") and parish inmates should not be housed together because parish inmates are disruptive. Record Doc. No. 4 (Complaint at ¶ V).

On May 22, 2018, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Steven Mauterer, counsel for defendants. Plaintiff was sworn and

testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. After the Spears hearing and pursuant to my order, defense counsel submitted to me the videotape of the subject incident and the incident report that plaintiff referred to during his testimony, and I reviewed them. Record Doc. Nos. 16, 18–20. On August 15, 2018, I issued a report and recommendation in which I recommended that plaintiff's claims naming the jail as a defendant and concerning his medical care, conditions of confinement, mail tampering, recreation time and housing classification against the individual defendants be dismissed with prejudice. Record Doc. No. 21 at p. 41. I further recommended that further proceedings were required as to plaintiff's excessive force claim against the individual defendants. Id. at p. 42. The presiding district judge adopted my report and recommendation on October 10, 2018, and ordered that a preliminary conference be conducted to determine (1) if counsel should be appointed from this court's Civil Pro Bono Panel to represent plaintiff in this matter and (2) if all parties consent to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Record Doc. No. 22.

The preliminary conference was conducted on November 1, 2018. Record Doc. No. 25. At the conference, all parties orally consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff requested appointment of counsel. Id. Counsel was subsequently appointed to represent plaintiff in this matter. Record Doc. No. 26. This matter was then referred to a United States Magistrate Judge for

all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. Nos. 27, 28.

Defendants' Motion for Summary Judgment, Record Doc. No. 47, is now pending before me. Record Doc. No. 47. Plaintiff filed a timely opposition memorandum. Record Doc. No. 51. Defendants were permitted to file a reply. Record Doc. Nos. 52, 53, 54. Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that the motion is DENIED for the following reasons.

I. UNDISPUTED MATERIAL FACTS

The following material facts are accepted as undisputed solely for purposes of the pending motions for summary judgment.

On August 17, 2017, Hmeid was an inmate at Coleman. Record Doc. Nos. 21 at p. 2; 56 at p. 4. On August 17, 2017, St. Charles Parish Sheriff's Deputies including defendants Floyd, Bailey, Dominic and Richardson conducted a search of Pod C6, plaintiff's dorm at Coleman, in response to the smell of smoke emanating from the dorm. Record Doc. Nos. 47-5 at pp. 34-36; 47-6 at pp. 14, 17. Of the named defendants, only Richardson and Dominic were authorized to carry and use a taser gun on the date of the incident. Record Doc. Nos. 47-3 at p. 27; 47-4 at p. 21; 47-5 at p. 13; 47-6 at p. 32; 47-9 at p. 2.

As part of the search on August 17, 2017, correctional officers, including defendants, began to conduct strip searches of the inmates in Pod C6. Record Doc. No. 47-

4 at p. 34. Plaintiff's particular strip search procedure took place in the dorm shower area. Record Doc. No. 56 at p. 9. The incident was recorded on video by a prison surveillance camera. Record Doc. No. 20. During the search, Hmeid removed his clothes and proceeded to face the wall, raise his arms, squat and cough several times. Record Doc. Nos. 47-4 at pp. 56–57, 58–62; 47-5 at pp. 45; 56 at pp. 9–10. At some point during the search, defendant Richardson unholstered and pointed his taser at plaintiff. Record Doc. Nos. 47-4 at p. 34; 47-5 at p. 60. Soon after, Richardson grabbed Hmeid's left arm, and plaintiff was taken to the floor of the shower, surrounded by five guards and handcuffed. Record Doc. Nos. 47-4 at p. 35; 56 at pp. 11; 63–64; 20 (Video Footage at Time Stamp 00:31:46).

After Hmeid was handcuffed, he was escorted from Pod C6 to the booking area, and then to a segregation cell. Record Doc. Nos. 47-4 at p. 35; 47-5 at pp. 61, 63. Plaintiff's handcuffs were removed once in the segregation cell. Id. at p. 63. An officer again instructed plaintiff to perform the strip search procedure by bending at the waist. Record Doc. No. 20 (Video Footage at Time Stamp 1:00:30). Hmeid squatted instead of bending at the waist as instructed. Id.

Plaintiff received medical treatment for injuries after the incident. Record Doc. Nos. 47-7 at pp. 1–2, 4; 56 at pp. 15–16. The medical report provides that Hmeid suffered "abrasions to [right] shoulder, [left] index finger, [left and right knee], due to [an] altercation with deputies." Record Doc. No. 47-7 at p. 4.

II. <u>ANALYSIS</u>

A. <u>Legal Standards for Summary Judgment Motion</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." <u>Id</u>. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery and any affidavits supporting the conclusion that there is no genuine issue of material fact. <u>Id</u>. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. <u>Id</u>. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. <u>Id</u>. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587 (1986); Equal Emp't Opportunity Comm'n v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. See Anderson, 477 U.S. at 249–50; Hopper v. Frank, 16 F.3d 92, 97 (5th Cir. 1994).

Significantly for present purposes, in ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398–99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. See Tolan v. Cotton, 572 U.S. 650, 656 (2014); Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. See Lynch Props., Inc. v. Potomac Ins. Co. of Ill., 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue,

the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. See Celotex, 477 U.S. at 322–25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. See Little, 37 F.3d at 1075–76.

    B.    <u>Plaintiff's Excessive Force Claim</u>

Hmeid alleges that he was tased, taken to the ground, surrounded by officers, and then kicked and punched by defendants after being handcuffed. Record Doc. Nos. 4 (Complaint at ¶ V); 56 at pp. 8–15. Defendants assert that plaintiff was neither tased nor kicked or beaten. Record Doc. Nos. 47-3 at p. 117–18; 47-4 at pp. 64–65; 47-5 at p. 59–60; 47-6 at pp. 41–43. They concede only that they used some measure of force to restrain plaintiff and handcuff him because in their view he presented a threat to the safety and discipline of the facility by not complying with the strip search procedure and resisting being handcuffed. Record Doc. Nos. 47-1 at p. 5; ; 47-3 at pp. 118–121; 47-4 at pp. 34–35, 62–63.

The United States Supreme Court has "held that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" Wilkins v. Gaddy, 559 U.S. 34, 34 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 4 (1992)). The Supreme Court in Wilkins confirmed that the standards it established in Hudson remain the law.

> The "core judicial inquiry," we held [in <u>Hudson</u>], was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S. Ct. 995; see also <u>Whitley v. Albers</u>, 475 U.S. 312, 319-321 . . . (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. . . ." <u>Hudson</u>, 503 U.S. at 9 . . . .
>
> . . . . As we stated in <u>Hudson</u>, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9 . . . . "The Eight Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Ibid.</u> (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. <u>Ibid.</u> (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).

<u>Id.</u> at 37–38.

The Supreme Court in <u>Wilkins</u> "left open the possibility of dismissal where the <u>injury conclusively shows</u> that the force applied was not unconstitutional." <u>Williams v. Jackson</u>, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing <u>Wilkins</u>, 130 S. Ct. at 1180) (emphasis added). <u>Wilkins</u> confirmed that <u>Hudson</u> remains the touchstone for evaluating claims under the Eighth Amendment. Thus, the Fifth Circuit's prior cases that relied on <u>Hudson</u> continue to provide binding legal standards for this court.

Under the Eight Amendment and Section 1983, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Hudson</u>, 503 U.S. at 6; accord <u>Petta v. Rivera</u>, 143 F.3d 895, 901 (5th Cir. 1998); <u>Flowers v. Phelps</u>, 956 F.2d 488, 491 (5th Cir.

1992). Plaintiff need not show a significant injury to establish a constitutional violation; however, the extent of injury may be considered in determining whether the force used was malicious, wanton or unnecessary. Hudson, 503 U.S. at 7; Flowers, 956 F.2d at 491. In addition, "[t]he Eight Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (quoting Hudson, 503 U.S. at 9–10).

> The law thus
>
> require[s] a plaintiff asserting an excessive force claim to have suffered at least some form of injury . . . . [W]e do not permit a cause of action for every contact between a citizen and a police officer. In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.

Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999) (quotation omitted). To determine whether injury caused by excessive force is more than de minimis for constitutional purposes, the context in which the force was used and all the surrounding circumstances must be examined. Id.

"To prevail on an excessive force claim at summary judgment, a plaintiff must present evidence that would allow a reasonable jury to find the following: '(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Fennell v. Quintela, 393 Fed. App'x.

150, 154 (5th Cir. 2010) (citing Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009) (quotation marks omitted)).

In this case, the sworn testimony of plaintiff obtained during the Spears hearing conflicts directly with the sworn statements of defendants, creating various issues of disputed material fact which preclude summary judgment. It is undisputed that plaintiff suffered injuries as a direct result of the incident at issue in this case. Record Doc. Nos. 47-7 at pp. 1–2, 4; 56 at pp. 15–16. As to whether there was a use of force that was clearly excessive and unreasonable, the parties dispute a variety of facts, which include but are not limited to whether plaintiff (1) defied or complied with defendants' commands that he bend at the waist and spread his buttocks cheeks during the strip search; (2) cursed and/or threatened the officers during the strip search; (2) physically resisted the officers' attempts to handcuff him; (3) was tased at all; and (4) was kicked, punched and beaten after he was handcuffed and not resisting. Record Doc. No. 56 at pp. 8–15, 37–38; Record Doc. Nos. 47-3 at pp. 48, 115–17, 121–23; 47-4 at pp. 34–35, 54–56, 64–65, 69; 77–79; 47-5 at p. 59–60, 69; 47-6 at pp. 31, 41–43.

Defendants argue that the video evidence "corroborates their testimony and refutes [plaintiff's] statements," and that the medical records and nurse's testimony establish that plaintiff was not tased. Record Doc. No. 47-1 at pp. 6, 8. On summary judgment, however, a court must view the evidence in the light most favorable to the opposing party, drawing all inferences in his favor, so long as they are not blatantly contradicted or utterly

discredited by other evidence. The video does not clearly depict either taser use or what occurred during the time after one of the deputies grabs Hmeid's arm and plaintiff is taken to the ground and handcuffed, because Hmeid is obscured by the officers surrounding him and audio, if any, of what is being said cannot clearly be heard. The nurse's testimony that Hmeid did not have taser prongs embedded in his skin and did not complain about being tased does not utterly discredit Hmeid's testimony that he was struck by "[a] type of a string or some type of metal thing" that "got struck on me but they was (sic) pulled out fast . . . ." Record Doc. No. 56 at p. 40. Whether the video and other materials defendants submit in support of their motion for summary judgment corroborate defendants' version of the incident, as opposed to plaintiff's, is a matter for the factfinder to determine at trial by weighing the evidence and determining the credibility of the conflicting testimony. Neither the video nor the medical records undisputedly resolve the basic and material factual disputes in this case, including whether plaintiff was resisting defendants' orders, unnecessarily tased (as he testifies) and then kicked and punched after he was restrained in handcuffs.

This case mirrors Bourne v. Gunnels, 921 F.3d 484 (5th Cir. 2019), in which the Fifth Circuit reviewed the district court's judgment in defendants' favor and remanded the case for further proceedings.

> [W]e must view the evidence in the light most favorable to [plaintiff], drawing all inferences in his favor, so long as they are not "blatantly contradicted" or "utterly discredited" by a video recording. The video does not depict what occurred during the five minutes between defendants'

> entering the cell and [plaintiff's] leaving it. Though the video and other materials defendants submit in support of their motion for summary judgment may well establish the constitutionality of defendants' use of force before entering the cell, or their use of force in taking [plaintiff] to the ground, they do not resolve all genuine disputes of material fact regarding the use of force after [plaintiff] was restrained in his cell. [Plaintiff] and defendants offer competing versions of what occurred during the use of force and whether defendants applied force after [plaintiff] stopped resisting and was restrained. Defendants assert that [plaintiff] resisted, thus requiring the use of force in a good faith effort to maintain or restore discipline, a contention that is supported by the defendants' yelling "stop resisting" in the video recording. But [plaintiff] opposes those characterizations with his own sworn declaration and the unsworn declarations of other inmates, asserting that because he was restrained and not resisting, the use of force was malicious and sadistic for the very purpose of causing harm. The video does not resolve the dispute, so there remains a genuine dispute of material fact.

Bourne, 921 F.3d at 492–93. In this instance, I cannot conclude that either the video or the medical evidence is so clear that Hmeid's sworn testimony should be disregarded.

The presence of numerous disputes of material fact concerning plaintiff's excessive force claim precludes summary judgment. See Fennell, 393 F. App'x 150, 152, 155 (5th Cir. 2010) (fact issues precluded summary judgment where inmate alleged that prison officer grabbed handcuffed inmate's wrists and twisted them, resulting in injury, while his arms were confined in a cell's food tray slot); Watts v. Smart, 328 F. App'x 291, 292, 293–94 (5th Cir. 2009) (evidence that defendants struck prisoner without provocation while he was in restraints created genuine fact issues whether force applied was excessive); Pena v. Rio Grande City, 879 F.3d 613, 619–20 (5th Cir. 2018) (tasing inappropriate when it is unclear whether plaintiff was resisting); Lewis v. Downey, 581 F.3d 467, 475–78 (7th Cir.

2009) (an officer's use of a taser gun on a non-compliant inmate was <u>not</u> de minimis, and a genuine issue of material fact precluded summary judgment).

Importantly, defendants argue they are entitled to qualified immunity. Record Doc. No. 47-1 at pp. 14–15. "Qualified immunity is an immunity from suit rather than a mere defense to liability." <u>Pearson v. Callahan</u>, 555 U.S. 223, 237 (2009) (quotation omitted). Thus, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." <u>King v. Handorf</u>, 821 F.3d 650, 653–54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." <u>Id</u>. at 654 (quoting <u>Gates v. Texas Dep't of Protective & Regulatory Servs.</u>, 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" <u>Id</u>. (quoting <u>Manis v. Lawson</u>, 585 F.3d 839, 843 (5th Cir. 2009)).

"To evaluate whether a government official is entitled to qualified immunity, we conduct a two-prong inquiry: we ask (1) whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right, and (2) whether the defendant's conduct was 'objectively reasonable in light of clearly established law.'" <u>Carroll v. Ellington</u>, 800 F.3d 154, 169 (5th Cir. 2015)

(citing Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 457 (5th Cir.2001))."This [second] inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Pearson, 555 U.S. at 244 (2009) (citing Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotation marks omitted) and Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful")). The United States Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality." Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (per curium). Instead, "the dispositive question in this step of the qualified-immunity analysis is 'whether the violative nature of particular conduct is clearly established.'" Cleveland v. Bell, 2019 WL 4385487, at *3 (5th Cir. 2019) (quoting Mullenix, 136 S.Ct. at 308) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011))).

> Regarding [qualified immunity], "the core judicial inquiry" "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Courts analyze (1) "the extent of [the] injury suffered," (2) "the need for [the] application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." "The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." Courts must "decide excessive force claims based on the nature of the force rather than the extent of the injury." An inmate need not establish a "significant injury" to pursue an excessive force claim because "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts."

Bourne, 921 F.3d at 491–92 (citing Hudson, 503 U.S. at 6–7 (internal quotation marks and citation omitted), Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998), Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996) and Wilkins v. Gaddy, 559 U.S. 34, 34, 37–38 (2010) (per curiam)).

As noted above, plaintiff has presented evidence that, taken in the light most favorable to him, indicates that he was tased by officers when he was not resisting or threatening and after he complied with their order to bend at the waist, and then was kicked and beaten after he was handcuffed. Record Doc. No. 56 at pp. 8–15, 37–38. Material fact issues exist as to whether defendants' conduct was objectively reasonable in light of clearly established law. Fifth Circuit case law indicates that the Eighth Amendment prohibits kicking and/or beating a prisoner when he is restrained and tasing him when it is unclear whether he is resisting. See Fennell, 393 F. App'x at 152, 155; Darden v. City of Fort Worth, 880 F.3d 722, 729–31 (5th Cir. 2018) (noting that police bodycam footage did not clearly contradict plaintiff's claim that he was not resisting when taser used); Pena, 879 F.3d at 619–20; Lewis, 581 F.3d at 475–78; Bourne, 921 F.3d at 492 (summary judgment was precluded when plaintiff presented evidence that he was "on the cell floor, handcuffed [and] shackled, and not a threat at [the] point" that correctional officers hit him in the head and body); Watts, 328 F. App'x 291, 292, 293–94 (5th Cir. 2009) (potential unconstitutional policy of excessive force in circumstances where defendants struck prisoner while he was in restraints); Saenz v. G4S Secure Sols. (USA), Inc., 224 F.Supp.

3d 477, 484 (W.D. Tex. 2016) (dragging prisoner by handcuffs across the floor for 18 minutes while restrained is not objectively reasonable); Kitchen v. Dallas County, 759 F.3d 468, 479 (5th Cir. 2014) (kicking, stomping and choking a subdued inmate could constitute a violation of the inmate's constitutional rights).

In addition, Fifth Circuit case law seems to indicate that, even when a plaintiff is resisting, other methods of subduing him are required before tasing is appropriate. See Cadena v. Ray, 728 Fed. App'x 293, 297 (5th Cir. 2018) (internal brackets omitted) ("Here, four officers helped 'take down' [plaintiff], and the video evidence clearly shows that he nonetheless continued to resist handcuffing. Only after the [o]fficers tried conventional methods to subdue [plaintiff] did [defendant] intervene with the taser.") (emphasis added); Pratt v. Harris Cty., Tex., 822 F.3d 174, 182 (5th Cir. 2016) ("[defendant] Medina used his taser only after [defendant] Lopez's efforts to subdue [plaintiff] were ineffective. . . . neither officer used their taser as the first method to gain [plaintiff's] compliance. . . . The record shows that both officers responded with measured and ascending actions that corresponded to [plaintiff's] escalating verbal and physical resistance.") (internal quotation marks and brackets omitted) (citing Poole v. City of Shreveport, 691 F.3d 624, 629 (5th Cir. 2012)).

Plaintiff has submitted evidence, principally in the form of his own sworn testimony, that would support a finding that defendants' alleged conduct constituted a violation of the Eighth Amendment's prohibition against excessive force. Although the credibility of

plaintiff's testimony is subject to substantial question in light of the nature and weight of the countervailing evidence, that is a finding for the factfinder at trial, not the court on summary judgment. Because material fact disputes preclude a finding that their conduct was objectively reasonable, defendants' qualified immunity defense cannot prevail on summary judgment. See Clark v. Massengill, 641 F. App'x 418, 420 (5th Cir. 2016); Carroll v. Ellington, 800 F.3d 154, 177 (5th Cir.2015) (citing Anderson v. McCaleb, 480 Fed.Appx. 768, 773 (5th Cir.2012) (per curiam), and Autin v. City of Baytown, 174 Fed.Appx. 183, 185 (5th Cir.2005)); Bourne, 921 F.3d at 492.

III. CONCLUSION

In summary, the testimony concerning the material facts of the incident presents stark contrast. Hmeid testified that his initial resistance to the strip search procedure was mild and verbal only, but that he ultimately submitted. He swears that he was tased, then punched and kicked <u>after</u> he was handcuffed, restrained and offering no resistance. Defendants testify that they did not fire a taser at plaintiff. They deny striking him in any way after he was handcuffed. They state that plaintiff defied their orders during the strip search and that his disobedience posed a security threat while they worked in the cell area to address the smoke issue, necessitating the restrained takedown and handcuffing they executed. The nurse who attended to Hmeid after the incident testified that she saw no indication of a tasing and that Hmeid did not complain that he was tased.

The visual evidence is inconclusive and subject to competing inferences. The video shows Hmeid saying something that cannot be heard during the strip search. It appears to show a red dot on Hmeid's shoulder, which defendants admit was a taser being aimed at plaintiff, but they deny that he was ever tased. When Hmeid is brought to the floor, the officers surrounding him obscure the view, making it unclear whether they struck Hmeid after he was restrained. A photograph of Hmeid's injuries after the incident shows a small wound that may or may not have been caused by a taser. For all the foregoing reasons, IT IS ORDERED that defendants' motion for summary judgment, Record Doc. No. 47, is DENIED.

New Orleans, Louisiana, this ___18th___ day of October, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE